The Honorable Samuel J. Steiner
Chapter 15
Hearing Date: Friday, May 28, 2010
Hearing Time: 9:30 a.m.
Hearing Location: Seattle – Room 8206
Response Date: Friday, May 21, 2010

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

BIG NEVADA, INC., *et al.*,

Debtors in a Foreign Proceeding.[1]

Case No. 09-13569 (SJS)

(Jointly Administered)

MOTION FOR ORDER
(1) AUTHORIZING SALE OF ASSETS
FREE AND CLEAR OF INTERESTS,
(2) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF CONTRACTS
AND LEASES, (3) WAIVING ANY
TEMPORARY STAY OF RELIEF, AND
(4) GRANTING OTHER RELIEF

Grant Thornton Limited (the "Receiver") is the receiver and foreign representative for fifteen subsidiaries (the "Washington Subsidiaries") of Washington Gaming, Inc. ("Washington Gaming"). The Receiver moves the Court for entry of an order granting the following relief:

---

[1] The debtors are Big Nevada, Inc. (EIN 91-1922258), Gameco, Inc. (EIN 48-1270165), Gaming Consultants, Inc. (EIN 91-1957844), Gaming Management, Inc. (EIN 84-1688364), Golden Nugget Tukwila, Inc. (EIN 91-1661061), Hollydrift Gaming, Inc. (EIN 81-0677426), Little Nevada, Inc. (EIN 91-1716128), Little Nevada II, Inc. (EIN 91-1916160), Little Nevada III, Inc. (EIN 91-1957843), Mill Creek Gaming, Inc. (EIN 91-2117491), Royal Casino Holdings, Inc. (EIN 51-0558214), Shoreline Gaming, Inc. (EIN 91-1661061), Shoreline Holdings, Inc. (EIN 48-1302343), Silver Dollar Mill Creek, Inc. (EIN 91-1957125), and Snohomish Gaming, Inc. (EIN 51-0558212). Each debtor is a corporation organized under the laws of the State of Washington. The debtors have also operated under or more of the following names: Silver Dollar Casino – Seatac, Golden Nugget Casino – Tukwila, Golden Nugget Casino – Shoreline, Club Hollywood Casino, Drift on Inn Casino, Silver Dollar Casino – Tukwila, Silver Dollar Casino – Renton, Royal Casino, Silver Dollar Casino – Mill Creek.

MOTION TO APPROVE SALE OF ASSETS, ETC. - 1
DWT 14540747v4 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   (1)   authorizing the Receiver to sell the assets of the Washington Subsidiaries to NG

2   Washington II, LLC ("Nevada Gold") pursuant to an Asset Purchase Agreement (the "Purchase

3   Agreement") in the form attached to as Exhibit A to the Court's Order (1) Approving Form Of

4   Purchase Agreement, (2) Approving Procedures For Sale Of Debtors' Assets, (3) Approving

5   Assumption And Assignment Procedures, (4) Approving Notice Procedures And Forms Of

6   Notice, And (5) Granting Other Relief (Docket No. 53) (the "Procedures Order").

7   (2)   approving the assumption and assignment by the Receiver to Nevada Gold of

8   the executory contracts and unexpired leases identified on Exhibit A hereto (the "Schedule of

9   Agreements"), pursuant to the terms of the Purchase Agreement, and establishing the monetary

10  cure amounts, if any, under such executory contracts and leases;

11  (3)   waiving any temporary stay of the effectiveness of the requested relief; and

12  (4)   such other relief as the Court deems appropriate.

13  A proposed order has been filed with this motion.

14  The statutory predicates for the relief sought are sections 105, 363, 365, 1520, 1521 and

15  1525 of the Bankruptcy Code, as complemented by Bankruptcy Rules 6002, 6004, 6006, 9007

16  and 9029.  This Court has jurisdiction over the cases of each of the Washington Subsidiaries,

17  this motion, and the parties and properties affected thereby pursuant to 28 U.S.C. § 1334.  The

18  matters addressed in this motion are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(M),

19  (N), (O), and (P).  Venue is properly located in this Court pursuant to 28 U.S.C. § 1410.

20  ## I. FACTS

21  **A.    Background**

22  Prior to the filing of bankruptcy and receivership-related proceedings in Canada and the

23  United States, Evergreen Gaming Corporation ("Evergreen")[2] owned and operated gaming

24  operations in Alberta and Washington.  As of early 2009, Evergreen's Washington gaming

25  business operated through Washington Gaming, a Washington corporation.  Washington

26

27  [2] Evergreen is a corporation organized under the laws of the province of British Columbia, Canada.

MOTION TO APPROVE SALE OF ASSETS, ETC. - 2
DWT 14540747v4 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   Gaming's operations included 17 direct and indirect subsidiaries and 13 casinos. At the time of

2   the filing of the Chapter 15 cases, 10 casinos were operational.

3       The Washington Subsidiaries together operate seven out of the eight Evergreen casinos

4   still operating in the greater Seattle metropolitan area.[3] The facilities range in size from 4,500

5   square feet to 25,000 square feet, and have between six and fifteen gaming tables each. The

6   Washington Subsidiaries do not own any real property; each casino operates in property leased

7   from a third party. The Washington Subsidiaries employ approximately 1,000 people.

8       Substantially all of the assets of the Washington Subsidiaries are pledged to Fortress

9   Credit Corp., as agent for Fortress Credit Opportunities I, L.P., and Fortress Credit Funding II,

10  L.P. (collectively, "Fortress") to secure a $29 million loan made to Evergreen in 2007. Each of

11  Evergreen's direct and indirect subsidiaries (other than Mountlake Gaming, Inc. ("Mountlake")

12  and Riverside Casino, Inc. ("Riverside")) guaranteed Fortress's loan and pledged its assets to

13  secure the loan.[4]

14      As the Court is aware, on July 3, 2009, the Receiver was appointed as receiver for

15  Evergreen's Canadian subsidiaries and the Washington Subsidiaries by the Supreme Court of

16  British Columbia (the "Canadian Court"); and the Receiver was recognized as foreign

17  representative of the Washington Subsidiaries by this court. The Receiver sold the assets of

18  Evergreen's Canadian subsidiaries in 2009, and pursuant to orders of the Canadian Court, the

19  proceeds of sale after certain reserves were distributed to Fortress. As of the filing of this

20  motion, the current balance outstanding on Fortress's loans exceeds $22 million. The Receiver

21  has been overseeing operation of the Washington Subsidiaries' business since its appointment.

22  **B.     Sale Process for Washington Subsidiaries.**

23      Following its appointment, the Receiver worked with Fortress to find a suitable buyer

24  for the Washington Subsidiaries' businesses. A unique aspect of this case is that any sale of the

---

[3] The Receiver earlier closed a casino, recently ceased operations at another casino that was losing money, and
curtailed operations at another. Evergreen still operates one casino, the Riverside, through Riverside Casino, Inc.
[4] As a result of the sale of Evergreen's Canadian operations, Fortress's debt was paid down by approximately
$9.08 million.

MOTION TO APPROVE SALE OF ASSETS, ETC. - 3
DWT 14540747v4 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    Washington Subsidiaries' businesses requires the approval of the Washington State Gambling

2    Commission ("WSGC").[5] The universe of potential purchasers for gaming operations in

3    Washington is limited to those that can meet WSCG licensing requirements. The Washington

4    Subsidiaries and Fortress were able to provide the Receiver with information about parties who

5    might have the interest and capacity to purchase the assets of the Washington Subsidiaries.

6         In July and August 2009, the Receiver and Fortress solicited proposals from potential

7    purchasers of the Washington Subsidiaries. The Receiver distributed background materials,

8    created a "virtual" data room through which potential purchasers could access additional

9    materials, and provided site tours to several interested parties. The Receiver and Fortress

10   thereafter negotiated an all-cash transaction with a party (other than Nevada Gold) during the

11   fall of 2009. As it turned out, the potential purchaser did not have the cash or financing to

12   close a transaction. The Receiver determined not to seek court approval of the transaction, and

13   the agreement was terminated.

14         The Receiver resumed marketing efforts in January 2010, and again pursued a

15   transaction with several potential purchasers. In connection with that effort, the Receiver

16   contacted parties that had previously been identified to the Receiver, and parties that had

17   contacted the Receiver during the fall of 2009. One of those potential purchasers was Nevada

18   Gold. Nevada Gold demonstrated a readiness to engage in a sale on reasonable terms, an

19   ability to provide a significant cash payment, and the capacity to finance a portion of the

20   purchase with Fortress. The Receiver elected to negotiate the Purchase Agreement with

21   Nevada Gold based on a number of factors, including that the purchase price proposed by

22   Nevada Gold was the highest of any qualified offer received, that Nevada Gold appears to have

23   the necessary financial capacity to close a transaction at the proposed purchase price, and that

24   Nevada Gold appears likely to be acceptable to the WSGC as they are already licensed in the

25   State of Washington to operate other casino properties. The Receiver and Nevada Gold

26   _____

27   [5] The Washington Subsidiaries' operations are also subject to other state and local regulation, including regulation
     by the Washington State Liquor Control Board.

MOTION TO APPROVE SALE OF ASSETS, ETC. - 4
DWT 14540747v4 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

executed the Purchase Agreement, dated as of April 14, 2010. The Purchase Agreement is subject to approval by both this Court and the Canadian Court.

The following is a summary of key provisions in the Purchase Agreement:[6]

- The base purchase price is $11,070,000 million, subject to working capital and EBITDA adjustments. In the case of Nevada Gold, $5,070,000 of the purchase price will be paid through financial accommodations provided by Fortress.

- Closing is subject to (a) approval by the Canadian Court and this Court, and (b) receipt of necessary regulatory approvals, including from the WSGC and Washington State Liquor Control Board ("WSLCB"). There is no due diligence condition. Nevada Gold's obligation to close is conditioned on Fortress providing $5,070,000 of financial accommodations, for which a term sheet agreement is in place.

- Nevada Gold has deposited $1,000,000 in escrow at US Bank, which will be forfeited to the Receiver if Nevada Gold fails to close the transactions under specified conditions.

- The purchaser will acquire substantially all of the assets of the Washington Subsidiaries free and clear of all interests pursuant to section 363 of the Bankruptcy Code (subject to limited exceptions).

- The Receiver will assume and assign to Nevada Gold executory contracts identified by Nevada Gold ten business days prior to the Sale Hearing on May 28, 2010. Nevada Gold will cure any monetary defaults under the assumed executory contracts that it elects to have the Receiver assume and assign to it.

- The Receiver anticipates assuming and assigning to Nevada Gold seven leases for casinos currently being operated by the Receiver. Nevada Gold will cure any pre-receivership monetary defaults under the assumed leases (which amounts are nominal).

- Nevada Gold will assume and pay ordinary course post-receivership accounts payable to trade creditors as of the closing (which will be reflected in a working capital adjustment).

- The parties may elect multiple closings through which it would sell the assets of some but not all of the Washington Subsidiaries to Nevada Gold under certain circumstances. In that event, the Purchase Agreement provides for apportionment of the Purchase Price among the various Washington Subsidiaries.

- The Purchase Agreement executed by Nevada Gold is subject to higher and better offers. However, if the Receiver sells to a party other than Nevada Gold, the

---

[6] The description of the Purchase Agreement in this Motion is intended only as a summary. This summary may not describe terms that are material to various parties in interest. Parties in interest are advised to consult the Procedures Order and its exhibits and should not rely on this summary.

MOTION TO APPROVE SALE OF ASSETS, ETC. - 5
DWT 14540747v4 0090149-000001
(09-13569)

receivership estate (which, at this point, consists almost entirely of assets pledged to Fortress) will pay a break-up fee of $1.0 million[7].

- Nevada Gold will use commercially reasonable efforts to offer employment to most of the Washington Subsidiaries' employees.

### C.     Notice of Motion

The Court entered the Procedures Order on May 7, 2010.  As reflected more fully in the Declaration of Service filed herewith, and consistent with the Procedures Order, the Receiver has or will timely given notice to all parties on the master mailing list, all parties who statutorily are entitled to notice, affected government agencies, all parties known to the Receiver who previously expressed an interest in acquiring the assets (or stock) of one or more the Washington Subsidiaries, all known stakeholders, lienholders, and all parties requesting special notice.

## II. DISCUSSION

### A.     The Proposed Sale Is in the Best Interests of Creditors and Other Parties in Interest.

The Receiver seeks authority to sell the purchased assets free and clear of interests pursuant to sections 363 and 1520 of the Bankruptcy Code, with the interests of other persons (including the liens and security interests of secured creditors) attaching to the proceeds of sale in the same order, and with the same priority, as those liens and security interests had as of the commencement of these chapter 15 cases on April 15, 2009 (the "Commencement Date").

Section 1520(a)(2) of the Bankruptcy Code provides that upon the recognition of a foreign main proceeding (as has occurred here), section 363 applies to transfers of the debtor's interest in property "within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of the estate."  Section 363(b) of the Bankruptcy Code, in turn, provides that after notice and hearing, property of the estate may be sold outside the ordinary course of business.

---

[7] The Purchase Agreement also has an independent provision allowing recovery of the Buyer's reasonable out of pocket costs and expenses up to $100,000 if the Purchase Agreement is terminated on account of a default by the Receiver.

MOTION TO APPROVE SALE OF ASSETS, ETC. - 6
DWT 14540747v4 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Decisions to sell property pursuant to section 363(b)(1) must be based upon the sound business judgment of the trustee. See *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (a judge determining a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) ("courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence" (*citing Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc.* (*In re Integrated Resources, Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992)).

Courts routinely defer to a trustee's business judgment, so long as the decision was "made in good faith, upon a reasonable basis, and within the scope of [such debtor's] authority under the [Bankruptcy] Code." *In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981); *see also Frostbaum v. Ochs*, 277 B.R. 470, 475–76 (E.D.N.Y. 2002); *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he [Bankruptcy] Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").

Here, the Receiver, working with Fortress (the Debtors' largest secured creditor) marketed the Washington Subsidiaries' assets to an identifiable group of potentially qualified purchasers. Nevada Gold's offer represents the highest offer received as of the date of filing this Motion. The Receiver is further exposing the assets of the Washington Subsidiaries to the market pursuant to the Procedures Order. Absent the receipt of a higher and better offer pursuant to the Procedures Order, the Receiver believes that closing the Purchase Agreement with Nevada Gold is in the best interests of the Washington Subsidiaries' receivership estates.

**B.      The Purchased Assets Will Be Sold Free and Clear of All Liens, Claims, Encumbrances, and All Other Interests.**

Section 363(f) of the Bankruptcy Code provides that property sold pursuant to section 363(b) may be conveyed "free and clear of any interest in such property of any entity other than

the estate . . . ." Consistent with the use of the term elsewhere in the Bankruptcy Code, courts construe the term "interest" broadly to include all legal and equitable interests in the property and arising from the property. *See In re General Motors Corp.*, 407 B.R. 463, 503-06 (Bankr. S.D.N.Y. 2009) (authorizing sale free and clear of successor liability), *aff'd sub nom. In re Motors Liquidation Co.*, ___ B.R. ___, 2010 WL 1730802 (S.D.N.Y. April 28, 2010); *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003) ("interests" is read expansively to include obligations that may flow from ownership of the property). The sale will be consummated free and clear of all interests so long as any one of five criteria is met with respect to the Purchased Assets:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. § 363(f). The sale of Washington Subsidiaries' assets to Nevada Gold satisfies one or more of the criteria enumerated in subsections (1), (2), (4) or (5) of section 365(f) of the Bankruptcy Code.

> 1. **Applicable Nonbankruptcy Law Permits Sale of the Purchased Assets Free and Clear of Interests, and Entities Holding Such Interests Could Be Compelled to Accept Money Satisfaction.**

There are several mechanisms under nonbankruptcy law that permit sales free and clear of interests and several legal and equitable proceedings in which holders of interests may be compelled to accept money satisfaction of their interests in purchased assets. Those include sales conducted by state court receivers and real and personal property foreclosure sales conducted pursuant to state law. *In re Jolan, Inc.*, 403 B.R. 866, 869–70 (Bankr. W.D. Wash.

MOTION TO APPROVE SALE OF ASSETS, ETC. - 8
DWT 14540747v4 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

2009); *see also* Memorandum Regarding Sale, *In re Wrangell Seafoods, Inc.*, No. 09-00012 (Bankr. D. Alaska, Mar. 9, 2009). The Purchased Assets may therefore be sold free and clear of interests pursuant to section 365(f)(1) and (5) of the Bankruptcy Code, just as they could in a proceeding outside of bankruptcy.

The Washington Subsidiaries' primary secured creditor is Fortress.[8] Fortress has consented to the sale of the Washington Subsidiaries' assets pursuant to the Purchase Agreement. The assets can therefore be sold free and clear of interests over the objections, if any, of junior secured creditors.

> **2.    Each Entity With an Interest in Purchased Assets That Does Not Object Is Deemed to Consent to a Sale Free and Clear of Interests.**

The Receiver has provided notice of the proposed sale to each known creditor of the Washington Subsidiaries. If they do not object, they should be deemed to have consented to the sale. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285–86 (7th Cir. 2002) (in a sale conducted pursuant to section 363 of the Bankruptcy Code, "lack of objection (provided of course there is notice) counts as consent.").

> **3.    Any Previously Undisclosed Interests May Be in Bona Fide Dispute.**

To the extent that any interest asserted in a purchased asset is in bona fide dispute, such purchased asset may be sold free and clear of such interest pursuant to section 363(f)(4). The Receiver has attempted to identify and take into account valid interests in the purchased assets. If any interest is not valid, or is in bona fide dispute, then the purchased assets may be conveyed free and clear of such interest.

> **C.    The Sale Is Being Made in Good Faith.**

A purchaser's good faith "is shown by the integrity of his conduct during the course of the sale proceedings." *In re Gucci*, 126 F.3d 380, 390 (2d Cir.1997) (*quoting In re Rock Industries Machinery Corp.*, 572 F.2d 1195, 1198 (7th Cir.1978)). The Receiver, with the

---

[8]  The only senior liens of which the Receiver is presently aware  are (i) PACA claims (all known PACA claims have been paid), and (ii) certain statutory and tax liens, which will be paid in connection with closing of the Purchase Agreement.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  assistance of Fortress, solicited offers from third parties, and negotiated the Purchase

2  Agreement with Nevada Gold through an arms length negotiation. Nevada Gold is not an

3  affiliate of the Washington Subsidiaries, the Receiver, or Fortress. There is no evidence of

4  fraud, collusion, or underhanded conduct. The offer tendered by Nevada Gold is the highest

5  and best offer submitted to the Receiver as of the filing of this Motion. Nevada Gold is entitled

6  to a finding of good faith and the protections of section 363(m) of the Bankruptcy Code.

7  **D.    The Assumption and Assignment of the Assumed Contracts Should Be Approved Pursuant to the Order Recognizing the Receiver as Foreign**

8  **Representative and Section 365 of the Bankruptcy Code.**

9  Although section 365 of the Bankruptcy Code does not automatically apply to a chapter

10  15 case, the Court's July 6, 2009 order recognizing the Receiver as foreign representative gave

11  the Receiver the power to assume or reject contracts and leases after notice and a hearing. (Or.,

12  No. 09-13567, Doc. 100 at 11, July 6, 2009.) In the Procedures Order, the Court made Sections

13  365(a), (b) and (f) of the Bankruptcy Code applicable to this case (Procedures Order ¶ 6).

14  As an initial matter, the decision to assume and assign executory contracts and

15  unexpired leases is subject to the business judgment rule. *Conejo Enters., Inc. v. Durkin* (*In re*

16  *G.I. Indus., Inc.*), 204 F.3d 1276, 1282 (9th Cir. 2000); *Orion Pictures Corp. v. Showtime*

17  *Networks, Inc.* (*In re Orion Pictures*), 4 F.3d 1095, 1099 (2d Cir. 1993) (the standard to be

18  applied by a court in determining whether an executory contract or unexpired lease should be

19  assumed is the business judgment test).

20  When assuming an executory contract or unexpired lease, a debtor is required to cure

21  any defaults under the contract or lease or provide adequate assurance that it will promptly cure

22  such defaults. 11 U.S.C. § 365(b)(1)(A). If there has been a default, the debtor must

23  compensate, or provide adequate assurance that it will promptly compensate, the other parties

24  to the contract or lease for their actual pecuniary losses resulted from such default. 11 U.S.C.

25  § 365(b)(1)(B). A debtor is not, however, required to cure cross-defaults to other agreements

26  that are rejected by the debtor. *See, e.g.*, *In re Plitt Amusement Co. of Wa., Inc.*, 233 B.R. 837,

27

MOTION TO APPROVE SALE OF ASSETS, ETC. - 10
DWT 14540747v4 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

847–48 (Bankr. C.D. Cal. 1999) (cross-default provisions unenforceable because "[i]t is well-settled that, in the bankruptcy context, cross-default provisions do not integrate otherwise separate transactions or leases.").

In addition, the debtor must provide adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(1)(C). Adequate assurance of future performance may be different in each case, depending on the facts of the proposed assumption. *In re Fleming Cos.*, 499 F.3d 300, 307 (3d Cir. 2007). The trustee need only show an ability to cure defaults and make future payments. If the assignee is in sound financial health and has experience in managing the type of business associated with the assignment contract or lease, that is sufficient. *See In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986).

Here, the Receiver has determined that assumption and assignment of the executory contracts and leases on Exhibit A (designated by Nevada Gold to be assumed) is in the best interests of the Washington Subsidiaries receivership estates. The Purchase Agreement provides for Nevada Gold to cure of all outstanding monetary defaults under assumed and assigned executory contracts and leases. With respect to adequate assurance of future performance, Nevada Gold & Casinos, Inc., Nevada Gold's parent, is an established public company that through a wholly owned subsidiary already manages gaming operations in Washington. Nevada Gold & Casino's other operations have already undergone Washington's stringent gaming and liquor approval processes. Robert Sturges, CEO of Nevada Gold & Casino's, Inc. has filed a declaration that includes publicly available financial information.[9] The information included with Mr. Sturges' declaration should provide adequate assurance of future performance to counterparties to executory contracts and leases.

### E. There Is No Just Reason to Delay the Effectiveness of the Relief Requested.

Bankruptcy Rule 6004(h) provides that "an order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court

---

[9] Because Nevada Gold & Casinos, Inc. is a public company, it does not routinely disseminate non-public information.

MOTION TO APPROVE SALE OF ASSETS, ETC. - 11
DWT 14540747v4 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

orders otherwise." Bankruptcy Rule 6006(d) stays an order authorizing the assignment of an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code. The Receiver requests that any order granting the relief requested herein be effective immediately by waiving the application of any Bankruptcy Rule that would otherwise stay the effectiveness of the Court's order.

**F.     To the Extent Necessary, the Court Has the Inherent Power Pursuant to Section 105 of the Bankruptcy Code to Grant the Requested Relief.**

Section 105(a) of the Bankruptcy Code gives the Court the inherent power to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This directive is consistent with the historically broad powers of bankruptcy courts to restructure debtor-creditor relationships. *See United States v. Energy Resources Co.*, 495 U.S. 545 (1990). Although all of the relief sought pursuant to this motion is specifically authorized by other provisions of the Bankruptcy Code, to the extent necessary, this Court has the inherent power grant the requested relief.

### III. CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court grant its motion and enter an order substantially in the form attached hereto.

DATED this 10th day of May, 2010.

Davis Wright Tremaine LLP
Attorney for Grant Thornton Limited, as Receiver
and Foreign Representative for the Washington
Subsidiaries

By ___/s/ Ragan L. Powers_____
         Ragan L. Powers, WSBA #11935
         C. Keith Allred, WSBA #6566
         Hugh R. McCullough, WSBA #41453

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## Exhibit A to Motion to Approve Sale of Assets

## Cure Amount Schedule

| Non-Debtor Party to Agreement | Debtor Party to Agreement | Name and Date of Agreement | Proposed Amount to Be Paid to Cure Existing Defaults Under Agreement |
|---|---|---|---|
| 192nd Pacific Properties L.L.C. and Roy R. Toland and Audrey V. Toland [1] | Big Nevada, Inc. | 192nd Pacific Properties Lease, effective June 1, 2002 | $0.00 |
| ABS Business Data, LLC | Golden Nugget Tukwila, Inc. | Sonoma Table Game Player Tracking System Licensing Agreement, dated February 2, 2005 | $0.00 |
| ADP, Inc. | Gaming Consultants, Inc. | National Account Services Master Services Agreement, dated August 14, 2003, as amended | $37.31 |
| Allen and Sharon Hemmat | Royal Casino Holdings, Inc. | Commercial Premises Lease, dated December 22, 2006 | $0.00 |
| Asplund Supply, Inc. | Silver Dollar Mill Creek, Inc. | Dishmachine Lease Agreement, dated January 1, 2005 | $0.00 |
| Bruce Fehling and Yong Hui Fehling | Golden Nugget Tukwila, Inc. | Golden Nugget Casino Lease, dated November 29, 2004 | $0.00 |
| Cintas Corporation | Gaming Consultants, Inc. | Standard Uniform Rental Service Agreement, dated December 17, 2007, as amended | $0.00 |
| Cintas Corporation | Gaming Consultants, Inc. | Standard Uniform Rental Service Agreement, dated March 22, 2005 | $0.00 |
| Coca-Cola | Gaming Consultants, Inc. | Beverage Marketing Agreement | $0.00 |

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

| Non-Debtor Party to Agreement | Debtor Party to Agreement | Name and Date of Agreement | Proposed Amount to Be Paid to Cure Existing Defaults Under Agreement |
|---|---|---|---|
| Dunbar Armored, Inc. | Gaming Consultants, Inc. | Service Contract, dated April 21, 2005, as amended | $1,845.17 |
| Ecolab, Inc. | Big Nevada, Inc. | Rental Agreement, dated February 2, 2009 | $652.41 |
| Ecolab, Inc. | Golden Nugget Tukwila, Inc. | Rental Agreement, dated February 26, 2009 | $130.35 |
| Ecolab, Inc. | Little Nevada, Inc. | Rental Agreement | $408.62 |
| Ecolab, Inc. | Silver Dollar Mill Creek, Inc. | Rental Agreement, dated February 26, 2009 | $196.70[1] |
| Ecolab, Inc. | Silver Dollar Mill Creek, Inc. | Rental Agreement, dated February 2, 2009 | See FN3. |
| Ecolab, Inc. | Little Nevada, Inc. | Rental Agreement, dated February 2, 2009 | $798.87 |
| Fire Protection, Inc. | Silver Dollar Mill Creek, Inc. | Agreement, dated May 17, 2005 | $1,903.14 |
| Global Software, Inc. | Gaming Consultants, Inc. | Perpetual License Agreement, dated November 14, 2008 | $0.00 |
| LeaseCo L.L.C. | Big Nevada, Inc. | Maintenance Agreement | $313.92 |
| LeaseCo L.L.C. | Golden Nugget Tukwila, Inc. | Maintenance Agreement | $262.69 |
| LeaseCo L.L.C. | Silver Dollar Mill Creek, Inc. | Maintenance Agreement, dated July 19, 2004 | $444.85 |
| LeaseCo L.L.C. | Little Nevada, Inc. | Maintenance Agreement, dated February 28, 2005 | $371.69 |
| LeaseCo L.L.C. | Hollydrift Gaming, Inc. | Maintenance Agreement | $468.70 |

[1] Amount is for all Ecolab agreements with Silver Dollar Mill Creek, Inc.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

| Non-Debtor Party to Agreement | Debtor Party to Agreement | Name and Date of Agreement | Proposed Amount to Be Paid to Cure Existing Defaults Under Agreement |
|---|---|---|---|
| Leibold Communications Inc. | Little Nevada, Inc. | Service Agreement, dated November 5, 2005 | $20.00 |
| Little Family, LLC and Little 3100, LLC | Little Nevada, Inc. | Lease Agreement, dated March 8, 2004 | $0.00 |
| Lori Bowden d/b/a Cowgirls Espresso | Gaming Consultants, Inc. | Concession Agreement, dated March 10, 2006 | $0.00 |
| Muzak LLC | Big Nevada, Inc. | Music Service Agreement | $39.01 |
| Muzak LLC | Golden Nugget Tukwila, Inc. | Music Service Agreement | $42.92 |
| Muzak LLC | Little Nevada, Inc. | Music Service Agreement | $29.25 |
| Net River, LLC | Gaming Consultants, Inc. | Unknown | $17.95 |
| Old 99 Property Group, L.L.C. | Hollydrift Gaming, Inc. | Commercial Premises Lease, dated March 5, 2007 | $2,386.32[2] |
| Old 99 Property Group, L.L.C. | Hollydrift Gaming, Inc. | Commercial Premises Lease (Parking Lot), dated March 5, 2007[3] | See FN4. |
| Otis Elevator Company | Hollydrift Gaming, Inc. | Maintenance Agreement, dated September 23, 2004 | $0.00 |
| Ruth Dykeman Children's Center | Little Nevada, Inc. | Sublease Agreement, dated December 21, 2007, as amended | $0.00 |
| Sage Software | Gaming Consultants, Inc. | Software License Agreement | $0.00 |
| Shuffle Master, Inc. | Big Nevada, Inc. | License and Lease Agreement, dated February 13, 2007 | $2,946.65[4] |

---

[2] Amount is for all Old 99 Property Group, L.L.C., agreements with Hollydrift Gaming, Inc. that may be assumed.
[3] This lease may not be assumed and assigned depending on resolution of parking issues.
[4] Amount is for all Shuffle Master agreements with Big Nevada, Inc.

EXHIBIT A TO MOTION TO APPROVE SALE OF ASSETS - 3
DWT 14694147v1 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

| Non-Debtor Party to Agreement | Debtor Party to Agreement | Name and Date of Agreement | Proposed Amount to Be Paid to Cure Existing Defaults Under Agreement |
|---|---|---|---|
| Shuffle Master, Inc. | Big Nevada, Inc. | Sales/Lease Agreement, dated February 21, 2006 | See FN6. |
| Shuffle Master, Inc. | Big Nevada, Inc. | License and Lease Agreement, dated February 11, 2009 | See FN6. |
| Shuffle Master, Inc. | Big Nevada, Inc. | License and Lease Agreement, dated March 2, 2009 | See FN6. |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | License and Lease Agreement, dated August 27, 2009 | $4,481.66[5] |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | Sales/Lease Agreement, dated May 20, 2004 | See FN7. |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | Sales/Lease Agreement, dated March 30, 2004 | See FN7. |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | License and Lease Agreement, dated March 31, 2006 | See FN7. |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | Sales/Lease Agreement, dated March 12, 2002 | See FN7. |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | Sales/Lease Agreement, dated March 29, 2004 | See FN7. |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | Sales/Lease Agreement, dated August 25, 2003 | See FN7. |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | Sales/Lease Agreement, dated March 24, 2005 | See FN7. |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | Sales/Lease Agreement, dated May 4, 2005 | See FN7. |

---

[5] Amount is for all Shuffle Master agreements with Golden Nugget Tukwila, Inc.

EXHIBIT A TO MOTION TO APPROVE SALE OF ASSETS - 4
DWT 14694147v1 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

| Non-Debtor Party to Agreement | Debtor Party to Agreement | Name and Date of Agreement | Proposed Amount to Be Paid to Cure Existing Defaults Under Agreement |
|---|---|---|---|
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | License and Lease Agreement, dated March 11, 2009 | See FN7. |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | Sales/Lease Agreement, dated October 10, 2005 | See FN7. |
| Shuffle Master, Inc. | Golden Nugget Tukwila, Inc. | License and Lease Agreement, dated October 31, 2008 | See FN7. |
| Shuffle Master, Inc. | Little Nevada, Inc. | License and Lease Agreement, dated January 28, 2009 | $1,696.10[6] |
| Shuffle Master, Inc. | Little Nevada, Inc. | License and Lease Agreement, dated September 3, 2009 | See FN8. |
| Shuffle Master, Inc. | Little Nevada, Inc. | License and Lease Agreement, dated September 21, 2009 | See FN8. |
| Shuffle Master, Inc. | Little Nevada, Inc. | Sales/Lease Agreement, dated November 5, 2004 | See FN8. |
| Shuffle Master, Inc. | Little Nevada, Inc. | Sales/Lease Agreement, dated April 25, 2005 | See FN8. |
| Shuffle Master, Inc. | Little Nevada, Inc. | Sales/Lease Agreement, dated May 4, 2005 | See FN8. |
| Shuffle Master, Inc. | Silver Dollar Mill Creek, Inc. | License and Lease Agreement, dated September 11, 2009 | $2,869.71[7] |
| Shuffle Master, Inc. | Silver Dollar Mill Creek, Inc. | Sales/Lease Agreement, dated September 11, 2009 | See FN9. |
| Shuffle Master, Inc. | Silver Dollar Mill Creek, Inc. | License and Lease Agreement, dated August 15, 2007 | See FN9. |

---

[6] Amount is for all Shuffle Master agreements with Little Nevada, Inc.
[7] Amount is for all Shuffle Master agreements with Silver Dollar Mill Creek, Inc.

EXHIBIT A TO MOTION TO APPROVE SALE OF ASSETS - 5
DWT 14694147v1 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

| Non-Debtor Party to Agreement | Debtor Party to Agreement | Name and Date of Agreement | Proposed Amount to Be Paid to Cure Existing Defaults Under Agreement |
|---|---|---|---|
| Shuffle Master, Inc. | Silver Dollar Mill Creek, Inc. | Sales/Lease Agreement, dated September 15, 2004 | See FN9. |
| Shuffle Master, Inc. | Silver Dollar Mill Creek, Inc. | License and Lease Agreement, dated March 20, 2006 | See FN9. |
| Shuffle Master, Inc. | Silver Dollar Mill Creek, Inc. | Sales/Lease Agreement, dated March 10, 2005 | See FN9. |
| Shuffle Master, Inc. | Silver Dollar Mill Creek, Inc. | License and Lease Agreement, dated October 31, 2008 | See FN9. |
| Shuffle Master, Inc. | Silver Dollar Mill Creek, Inc. | License and Lease Agreement, dated November 10, 2008 | See FN9. |
| Shuffle Master, Inc. | Silver Dollar Mill Creek, Inc. | License and Lease Agreement, dated October 16, 2008 | See FN9. |
| Shuffle Master, Inc. | Silver Dollar Mill Creek, Inc. | License and Lease Agreement, dated October 16, 2008 | See FN9. |
| Shuffle Master, Inc. | Little Nevada, Inc. | Sales/Lease Agreement, dated April 11, 2005 | $3,423.74[8] |
| Shuffle Master, Inc. | Little Nevada, Inc. | Sales/Lease Agreement, dated June 3, 2005 | See FN10. |
| Shuffle Master, Inc. | Little Nevada, Inc. | License and Lease Agreement, dated March 6, 2008 | See FN10. |
| Shuffle Master, Inc. | Little Nevada, Inc. | License and Lease Agreement, dated May 16, 2006 | See FN10. |
| Shuffle Master, Inc. | Little Nevada, Inc. | License and Lease Agreement, dated August 17, 2007 | See FN10. |

---

[8] Amount is for all Shuffle Master agreements with Little Nevada, Inc.

EXHIBIT A TO MOTION TO APPROVE SALE OF ASSETS - 6
DWT 14694147v1 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

| Non-Debtor Party to Agreement | Debtor Party to Agreement | Name and Date of Agreement | Proposed Amount to Be Paid to Cure Existing Defaults Under Agreement |
|---|---|---|---|
| Shuffle Master, Inc. | Little Nevada, Inc. | Sales/Lease Agreement, dated January 19, 2006 | See FN10. |
| Shuffle Master, Inc. | Little Nevada, Inc. | License and Lease Agreement, dated February 4, 2009 | See FN10. |
| Shuffle Master, Inc. | Little Nevada, Inc. | Sales/Lease Agreement, dated April 8, 2005 | See FN10. |
| Shuffle Master, Inc. | Little Nevada, Inc. | Sales/Lease Agreement, dated January 19, 2005 | See FN10. |
| Shuffle Master, Inc. | Little Nevada, Inc. | License and Lease Agreement, dated October 30, 2008 | See FN10. |
| Shuffle Master, Inc. | Little Nevada, Inc. | License and Lease Agreement, dated March 14, 2007 | See FN10. |
| Shuffle Master, Inc. | Little Nevada, Inc. | Sales/Lease Agreement, dated November 2, 2004 | See FN10. |
| Shuffle Master, Inc. | Little Nevada, Inc. | Sales/Lease Agreement, dated September 22, 2004 | See FN10. |
| Shuffle Master, Inc. | Royal Casino Holdings, Inc. | License and Lease Agreement, dated June 8, 2009 | $6,555.56[9] |
| Shuffle Master, Inc. | Royal Casino Holdings, Inc. | License and Lease Agreement, dated April 23, 2009 | See FN11. |
| Shuffle Master, Inc. | Royal Casino Holdings, Inc. | License and Lease Agreement, dated May 7, 2009 | See FN11. |
| Shuffle Master, Inc. | Royal Casino Holdings, Inc. | License and Lease Agreement, dated July 30, 2008 | See FN11. |

[9] Amount is for all Shuffle Master agreements with Royal Casino Holdings, Inc.

EXHIBIT A TO MOTION TO APPROVE SALE OF ASSETS - 7
DWT 14694147v1 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

| Non-Debtor Party to Agreement | Debtor Party to Agreement | Name and Date of Agreement | Proposed Amount to Be Paid to Cure Existing Defaults Under Agreement |
|---|---|---|---|
| Shuffle Master, Inc. | Royal Casino Holdings, Inc. | License and Lease Agreement, dated June 27, 2008 | See FN11. |
| Shuffle Master, Inc. | Royal Casino Holdings, Inc. | Sales/Lease Agreement, dated January 25, 2006 | See FN11. |
| Shuffle Master, Inc. | Royal Casino Holdings, Inc. | License and Lease Agreement, dated February 17, 2009 | See FN11. |
| Shuffle Master, Inc. | Royal Casino Holdings, Inc. | License and Lease Agreement, dated October 30, 2008 | See FN11. |
| Shuffle Master, Inc. | Hollydrift Gaming, Inc. | License and Lease Agreement, dated October 29, 2007 | $3,162.87[10] |
| Shuffle Master, Inc. | Hollydrift Gaming, Inc. | License and Lease Agreement, dated March 17, 2009 | See FN12. |
| Shuffle Master, Inc. | Hollydrift Gaming, Inc. | License and Lease Agreement, dated March 7, 2007 | See FN12. |
| Shuffle Master, Inc. | Hollydrift Gaming, Inc. | License and Lease Agreement, dated October 30, 2008 | See FN12. |
| Shuffle Master, Inc. | Hollydrift Gaming, Inc. | License and Lease Agreement, dated February 4, 2009 | See FN12. |
| Shuffle Master, Inc. | Hollydrift Gaming, Inc. | License and Lease Agreement, dated July 8, 2008 | See FN12. |
| Shuffle Master, Inc. | Hollydrift Gaming, Inc. | License and Lease Agreement, dated February 19, 2009 | See FN12. |

[10] Amount is for all Shuffle Master agreements with Hollydrift Gaming, Inc.

EXHIBIT A TO MOTION TO APPROVE SALE OF ASSETS - 8
DWT 14694147v1 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

| Non-Debtor Party to Agreement | Debtor Party to Agreement | Name and Date of Agreement | Proposed Amount to Be Paid to Cure Existing Defaults Under Agreement |
|---|---|---|---|
| Shuffle Master, Inc. | Hollydrift Gaming, Inc. | License and Lease Agreement, dated March 12, 2009 | See FN12. |
| Shuffle Master, Inc. | Gaming Consultants, Inc. | Financed Table Game Sales Agreement, dated July 28, 2006 | $12,330.50[11] |
| Shuffle Master, Inc. | Gaming Consultants, Inc. | Back-up Shuffler License & Lease Agreement, dated January 31, 2008 | See FN13. |
| Shuffle Master, Inc. | Gaming Consultants, Inc. | Sales/Lease Agreement, dated July 12, 2005 | See FN13. |
| Sign-O-Lite | Little Nevada, Inc. | Display Rental Agreement, dated August 30, 2005 | $598.00 |
| SoundTrax | Gaming Consultants, Inc. | Unknown | $900 |
| TALX Corporation | Gaming Consultants, Inc. | UC eXpress Unemployment Cost Management Service Agreement, dated August 2, 2006 | $267.49 |
| Tech Art, Inc. | Big Nevada, Inc. | License/Maintenance Agreement, dated June 4, 1999 | $64.81 |
| Tech Art, Inc. | Golden Nugget Tukwila, Inc. | License/Maintenance Agreement, dated March 20, 2002 | $34.20 |
| Tech Art, Inc. | Little Nevada, Inc. | License/Maintenance Agreement, dated July 13, 1998 | $136.82 |
| Tech Art, Inc. | Silver Dollar Mill Creek, Inc. | License/Maintenance Agreement, dated October 7, 2002 | $68.34 |
| Tech Art, Inc. | Little Nevada, Inc. | License/Maintenance Agreement, dated October 4, 2004 | $34.21 |

[11] Amount is for all Shuffle Master agreements with Gaming Consultants, Inc.

EXHIBIT A TO MOTION TO APPROVE SALE OF ASSETS - 9
DWT 14694147v1 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

| Non-Debtor Party to Agreement | Debtor Party to Agreement | Name and Date of Agreement | Proposed Amount to Be Paid to Cure Existing Defaults Under Agreement |
|---|---|---|---|
| Tech Art, Inc. | Royal Casino Holdings, Inc. | License/Maintenance Agreement | $50.14 |
| Tech Art, Inc. | Hollydrift Gaming, Inc. | License/Maintenance Agreement | $45.61 |
| TransFirst, LLC and Columbus Bank and Trust Company | Big Nevada, Inc. | Merchant Card Processing Agreement | $0.00 |
| TransFirst, LLC and Columbus Bank and Trust Company | Golden Nugget Tukwila, Inc. | Merchant Card Processing Agreement | $0.00 |
| TransFirst, LLC and Columbus Bank and Trust Company | Little Nevada, Inc. | Merchant Card Processing Agreement | $0.00 |
| TransFirst, LLC and Columbus Bank and Trust Company | Silver Dollar Mill Creek, Inc. | Merchant Card Processing Agreement | $0.00 |
| TransFirst, LLC and Columbus Bank and Trust Company | Little Nevada, Inc. | Merchant Card Processing Agreement | $0.00 |
| TransFirst, LLC and Columbus Bank and Trust Company | Royal Casino Holdings, Inc. | Merchant Card Processing Agreement, December 12, 2005 | $0.00 |
| TransFirst, LLC and Columbus Bank and Trust Company | Hollydrift Gaming, Inc. | Merchant Card Processing Agreement, dated November 27, 2006 | $0.00 |
| Tukwila Land Corp. | Little Nevada, Inc. | Real Estate Lease, effective June 1, 2000 | $0.00 |
| Wallace Properties - Mill Creek, LLC | Silver Dollar Mill Creek, Inc. | Lease Agreement, dated December 3, 2001, as amended | $0.00 |
| XO Communications Services, Inc. | Gaming Consultants, Inc. | XO Service Order Agreement, dated August 22, 2008 | $637.28 |

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700