The Honorable Samuel J. Steiner
Chapter 15
Hearing Date: Friday, May 28, 2010
Hearing Time: 9:30 a.m.
Hearing Location: Seattle – Room 8206
Response Date: Friday, May 21, 2010

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

BIG NEVADA, INC., *et al.*,

    Debtors in a Foreign Proceeding.

Case No. 09-13569 (SJS)

(Jointly Administered)

ORDER (1) AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF INTERESTS, (2) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES,
(3) WAIVING ANY TEMPORARY STAY OF RELIEF, AND (4) GRANTING OTHER RELIEF

THIS MATTER comes before the Court on the motion filed by Grant Thornton Limited, as receiver and foreign representative (the "Receiver") for an Order (1) Authorizing Sale Of Assets Free And Clear Of Interests, (2) Authorizing The Assumption And Assignment Of Contracts And Leases, (3) Waiving Any Temporary Stay of Relief, And (4) Granting Other Relief (the "Sale Motion"). In the Sale Motion, the Receiver seeks approval, among other things, to consummate the sale of certain of the assets, and to assume and assign certain of the executory contracts and leases, of the following Washington corporations for which it is acting as receiver and foreign representative in these jointly administered chapter 15 cases:

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 1
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 1 of 20

Big Nevada, Inc.
Gameco, Inc.
Gaming Consultants, Inc.
Gaming Management, Inc.
Golden Nugget Tukwila, Inc.
Hollydrift Gaming, Inc.
Little Nevada, Inc.
Little Nevada II, Inc.
Little Nevada III, Inc.
Mill Creek Gaming, Inc.
Royal Casino Holdings, Inc.
Shoreline Gaming, Inc.
Shoreline Holdings, Inc.
Silver Dollar Mill Creek, Inc.
Snohomish Gaming, Inc.

(collectively, the "Washington Subsidiaries"). The Court has considered the Sale Motion, the declarations of Mark Wentzell and Constantine Dakolias filed on April 22 and 23, 2010, the declarations of Robert Sturges filed on May 5, 10, and 25, 2010, the declaration of Greg Wright filed on May 5, 2010, the declaration of Ragan L. Powers filed on May 26, 2010, and all other papers filed in support of or opposition to the Sale Motion, including the Summary of Points and Objections filed by Old 99 Property Group, LLC on May 3, 2010, each declaration filed by John and Mark Mitchell, the Limited Response of Fortress Capital Corporation filed on May 21, 2010, and the documents filed in support of the Sale Motion by NG Washington II, LLC, and has reviewed and considered the files and records herein. Capitalized terms not otherwise defined in this Order shall have the same meanings as set forth in the Purchase Agreement.

BASED ON THE FOREGOING, the Court makes the following findings of fact and conclusions of law:

A. Prior to the filing of bankruptcy and receivership-related proceedings in Canada and the United States, Evergreen Gaming Corporation ("Evergreen")[1] owned and operated gaming operations in Alberta and Washington. At the time, Evergreen was a public company whose stock was traded on the Toronto Stock Exchange. As of early 2009, Evergreen's Washington gaming business operated through Washington Gaming, Inc. ("Washington

---

[1] Evergreen is a corporation organized under the laws of the province of British Columbia, Canada.

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 2
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  Gaming"). Washington Gaming's operations included seventeen direct and indirect

2  subsidiaries, ten casinos, and more than 1,000 employees. Some of Washington Gaming's

3  subsidiaries, including Gaming Consultants, provided accounting and administrative support to

4  the casino operations in Washington.

5        B.      The Washington Subsidiaries (i.e., the fifteen subsidiaries of Washington

6  Gaming for which the Receiver acts as receiver and foreign representative) together presently

7  operate eight of Evergreen's casinos in the greater Seattle metropolitan area. The facilities

8  range in size from 4,500 square feet to 25,000 square feet, and have between six and fifteen

9  gaming tables each. The Washington Subsidiaries do not own any real property – each casino

10 operates in property leased from a third party. The Washington Subsidiaries currently employ

11 approximately 1,000 people. The Washington State Gambling Commission ("WSGC")

12 regulates the Washington Subsidiaries' gaming activities.

13       C.      In 2007, Evergreen borrowed the principal sum of $28.25 million from Fortress

14 Credit Corp., Fortress Credit Opportunities I, L.P., and Fortress Credit Funding II, L.P.

15 (collectively, "Fortress"). Each of Evergreen's affiliates (except Mountlake Gaming, Inc.

16 ("Mountlake") and Riverside Casino, Inc. ("Riverside") guaranteed the loan from Fortress

17 (each such guaranty, a "Washington Subsidiary Guaranty"), and each of its affiliates (except

18 Mountlake and Riverside) pledged their assets to secure the loan. In 2008, Evergreen defaulted

19 on the loan from Fortress, which led to the filing of the CCAA Proceeding and these Chapter

20 15 cases.

21       D.      On April 15, 2009 (the "Commencement Date"), Evergreen and nineteen of its

22 Canadian and U.S. affiliates filed petitions in the Vancouver Registry of the Supreme Court of

23 British Columbia (the "Canadian Court") under the Companies' Creditors Arrangement Act,

24 R.S.C. 1985, c.C-36 and C-44 (the "CCAA") and the Business Corporations Act, S.B.C. 2002,

25 c.57 (the "CCAA Proceeding"). The Canadian Court appointed Deloitte & Touche, Inc.

26

27 ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 3
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

("Deloitte") as monitor in the CCAA Proceeding. The CCAA Proceeding included Washington Gaming and the Washington Subsidiaries, but not Mountlake and Riverside.

E. Shortly after the filings in Canada, on April 15, 2009, Deloitte filed chapter 15 petitions on behalf of Evergreen, Washington Gaming, and the Washington Subsidiaries in this Court (the "U.S. Proceeding"). Among other things, Deloitte sought recognition of the CCAA Proceeding as a foreign main proceeding under sections 1504 and 1515 of the Bankruptcy Code, and recognition of itself as foreign representative of Evergreen, Washington Gaming, and the Washington Subsidiaries, as defined in 11 U.S.C. § 101(23). The chapter 15 cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

F. As a result of settlement negotiations between Evergreen, its principals, and Fortress, on July 3, 2009, the Canadian Court (with Evergreen and Washington Gaming's consent) entered (a) an order approving a settlement agreement among Evergreen, Washington Gaming, the Washington Subsidiaries, Mountlake, Riverside, Norman Osatuik, and Cory Coyle, on the one hand, and Fortress, on the other, and (b) an order (the "Canadian Receivership Order") appointing the Receiver as the receiver for the Washington Subsidiaries and terminating Deloitte's role as the monitor for the Washington Subsidiaries.

G. On July 6, 2009, this Court entered orders (a) recognizing the CCAA Proceeding as a foreign main proceeding under section 1515 of the U.S. Bankruptcy Code, (b) replacing Deloitte and recognizing the Receiver as the foreign representative of the Washington Subsidiaries, and (c) retaining Deloitte as foreign representative of Washington Gaming and Evergreen (the "U.S. Recognition Order").

H. Subsequent to entry of the Canadian Receivership Order and the U.S. Recognition Order, the Receiver has been operating the businesses of the Washington Subsidiaries pursuant to the terms of the Receivership Order and the Recognition Order.

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 4
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 4 of 20

I. This Court has jurisdiction over the cases, the Sale Motion, and the parties and properties affected thereby pursuant to 28 U.S.C. § 1334. Consideration of the Sale Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M), (N), (O), and (P). Venue is properly located in this Court pursuant to 28 U.S.C. § 1410. This Court has jurisdiction over all of the Purchased Assets pursuant to 11 U.S.C. § 1520(a)(2).

J. In cooperation with Fortress, the Receiver has negotiated and entered into an Asset Purchase Agreement dated April 14, 2010 (the "Purchase Agreement") with NG Washington II, LLC ("Nevada Gold"). Consummation of the transactions contemplated in the Purchase Agreement are subject to the approval of this Court and the Canadian Court. A copy of the Purchase Agreement is attached hereto as Exhibit A. Unless otherwise defined herein, capitalized terms will have the meanings ascribed to them in the Purchase Agreement.

K. As evidenced by the affidavits of service previously filed with the Court, the Receiver provided proper, timely, adequate, and sufficient notice of the Sale Motion and the hearing to consider the Sale Motion (the "Sale Hearing") in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9014. Such notice was good and sufficient, and affords parties a reasonable opportunity to object or be heard with respect to the matters that are the subject of this Sale Order, and no other or further notice of the Sale Motion, the Sale Hearing, or the assumption and assignment of the Assumed Contracts and Assumed Real Property Leases is or shall be required.

L. Approval of the Purchase Agreement and consummation of the transactions provided for therein, including without limitation the sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts and Assumed Real Property Leases (collectively, the "Sale") at the times specified in the Purchase Agreement, is in the best interests of the Washington Subsidiaries in these cases, and their respective creditors, estates, and all other parties in interest.

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 5
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 5 of 20

M.  The Receiver has demonstrated both (i) good, sufficient, and sound business purpose and justification, and (ii) compelling circumstances for the Sale pursuant to 11 U.S.C. § 363(b), in that, among other things, the Receiver supervised a diligent sales and marketing effort, the Purchased Assets were proposed to be sold at an auction in the event that any Qualified Alternative Bid was submitted to the Receiver, and the price offered by Nevada Gold was the highest and best offer received, and any delay in concluding the Sale would result in the incurrence of additional substantial costs and expenses of administration as well as the accrual of significant additional postpetition interest on the Fortress secured loan, all to the detriment of creditors.

N.  The terms and conditions set forth in the Purchase Agreement and the Sale to Nevada Gold represent a fair and reasonable purchase price and constitute the highest and best offer obtainable for the Purchased Assets.

O.  A sale of the Purchased Assets at this time to Nevada Gold pursuant to 11 U.S.C. § 363(b) and (f) is the best alternative to preserve the value of the Purchased Assets and maximize the Washington Subsidiaries' receivership estates for the benefit of all constituencies.

P.  The Purchase Agreement was negotiated, proposed and entered into by the Receiver, as seller, and Nevada Gold, as purchaser, without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Receiver nor Nevada Gold has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

Q.  Nevada Gold is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby.  Nevada Gold will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Purchase Agreement at all times after the entry of this Sale Order.

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 6
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 6 of 20

R. The consideration provided by Nevada Gold for the Purchased Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Washington Subsidiaries' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and the State of Washington.

S. The transfer of the Purchased Assets to Nevada Gold will be a legal, valid, and effective transfer of the Purchased Assets, will vest Nevada Gold with all right, title, and interest of the Washington Subsidiaries in and to the Purchased Assets free and clear of all interests in such property of a person or entity other than the Washington Subsidiaries (collectively, the "Interests"), including, without limitation, (i) all liens and security interests of any kind or nature whatsoever arising under or out of, or in connection with, or in any way relating to the operation of the Washington Subsidiaries' business prior to the Sale, or any acts of any Washington Subsidiary, and (ii) all "claims," as defined in 11 U.S.C. § 101(5).

T. Nevada Gold would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting each Washington Subsidiary, its receivership estate, its creditors, and other parties in interest, if the sale of the Purchased Assets to Nevada Gold and the assignment of the Assumed Contracts and Assumed Real Property Leases to Nevada Gold was not free and clear of all Interests, or if Nevada Gold would, or in the future could, be liable for or on account of, or subject to, any Interest.

U. The Receiver may sell the Purchased Assets free and clear of all Interests because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)–(5) has been satisfied. Each holder of an Interest and each non-debtor party to an Assumed Contract or Assumed Real Property Lease who did not object, or who withdrew its objection, to the Sale or the Sale Motion is deemed to have consented pursuant to 11 U.S.C. § 363(f)(2). Each holder of

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 7
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 7 of 20

an Interest who did object falls within one or more of the other subsections of 11 U.S.C. § 363(f) and is adequately protected by having its Interests, if any, attach to the proceeds of the Sale attributable to the property against or in which it asserts an Interest, in the same order of priority that existed prior to the Sale and subject to all objections, counterclaims, recoupments and other defenses of the estate.

V. The (i) transfer of the Purchased Assets to Nevada Gold and (ii) assumption and assignment to Nevada Gold of the Assumed Contracts and Assumed Real Property Leases and the assumption of certain liabilities expressly stated in the Purchase Agreement will not subject Nevada Gold to any liability with respect to the operation of the Washington Subsidiaries' business prior to the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of successor or transferee liability.

W. The Receiver has demonstrated that it is an exercise of its sound business judgment to assume and assign the Assumed Contracts and Assumed Real Property Leases to Nevada Gold in connection with the consummation of the Sale, and the assumption and assignment of the Assumed Contracts and Assumed Real Property Leases is in the best interests of each Washington Subsidiary, its receivership estate, its creditors, and other parties in interest. The Assumed Contracts and Assumed Real Property Leases being assigned to, and the liabilities being assumed by, Nevada Gold are an integral part of the assets being purchased by Nevada Gold and, accordingly, the assumption and assignment of each Assumed Contract and Assumed Real Property Lease is reasonable and enhances the value provided to the creditors of each Washington Subsidiary's receivership estate. Each Washington Subsidiary has (i) cured, or has provided adequate assurance of cure of, any default existing prior to the date hereof under any of the Assumed Contracts and the Assumed Real Property Leases, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 8
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 8 of 20

prior to the date hereof under any of the Assumed Contracts and Assumed Real Property Leases, within the meaning of 11 U.S.C. § 365(b)(1)(B). The Receiver and Nevada Gold have provided adequate assurance of the future performance of and under the Assumed Contracts and Assumed Real Property Leases, within the meaning of 11 U.S.C. § 365(b)(1)(C).

X. Among the Purchased Assets under the Purchase Agreement are the "(ii) customer and player lists for the Casinos (and any data or documentation relating to this clause (ii) that is (A) in the Sonoma system database maintained by the Companies and/or (B) in the Receiver's possession)" which may constitute personally identifiable information (the "Possible PII") under section 101(41A) of the Bankruptcy Code. Wesley H. Avery was appointed as the consumer privacy ombudsman (the "CPO") pursuant to section 332 of the Bankruptcy Code by an order of the Court entered on May 21, 2010 and has filed a report (the "CPO Report") in the U.S. Proceeding. Attached to the CPO Report as Exhibit A is the privacy policy of the Washington Players Club (the "Privacy Policy) which concerns the Possible PII. Subsequent to the execution of the Purchase Agreement, the Receiver and Nevada Gold have agreed that Nevada Gold shall adopt the Privacy Policy pursuant to the Sale. As such, the CPO Report concludes, and the Court finds, that: (i) the Sale is consistent with the Privacy Policy in compliance with section 363(b)(1)(A), and (ii) giving due consideration to the facts, circumstances, and conditions of such Sale, no showing was made that such Sale would violate applicable nonbankruptcy law in compliance with section 363(b)(1)(B) of the Bankruptcy Code.

BASED on the foregoing, and good cause having been shown, the Court orders as follows:

1. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled and denied.

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 9
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS   Doc 80   Filed 05/27/10   Entered 05/27/10 13:51:59   Page 9 of 20

2. Pursuant to sections 105, 363, 365, 1520, and 1525 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 6002, 6004, 6006, and 9007, the Sale Motion is granted.

**APPROVAL OF THE PURCHASE AGREEMENT**

3. The Purchase Agreement, and all of the terms and conditions thereof, is hereby approved.

4. Pursuant to 11 U.S.C. §§ 105 and 363(b), the Receiver is authorized to consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

5. The Receiver is authorized to execute and deliver, and empowered to perform under, consummate and implement, the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be requested by Nevada Gold for the purpose of assigning, transferring, granting, conveying and conferring to Nevada Gold or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

**TRANSFER OF PURCHASED ASSETS**

6. Pursuant to 11 U.S.C. §§ 105(a) and 363(f), the Purchased Assets shall be transferred to Nevada Gold free and clear of all Interests, with all such Interests to attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses that the Receiver may possess with respect thereto. The Receiver will hold the proceeds of sale, other than the note or other debt instrument evidencing the Fortress Accommodation (as described below), pending further Court order.

7. Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Sale Order, each person and entity holding Interests against or in any Washington Subsidiary or the Purchased Assets, including but not limited to, all debt

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 10
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other unsecured creditors (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated and unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, any Washington Subsidiary, the Purchased Assets, the operation of the business of the Washington Subsidiaries prior to the Closing, or the transfer of the Purchased Assets to Nevada Gold, hereby is forever barred, estopped, and permanently enjoined from asserting such Interests against Nevada Gold, its successors and assigns, its property or interests, or the Purchased Assets.

8. The transfer of the Purchased Assets to Nevada Gold pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest Nevada Gold with all right, title, and interest of the Washington Subsidiaries in and to the Purchased Assets free and clear of all Interests.

9. The consideration provided by Nevada Gold for the Purchased Assets and the terms of the Purchase Agreement (a) are fair and reasonable and (b) shall be deemed to constitute reasonably equivalent value and fair consideration under 11 U.S.C. § 101, *et seq.*, and under the laws of the United States, each state, territory, and possession thereof, and the District of Columbia, and may not be avoided under 11 U.S.C. § 363(n).

**ASSUMPTION AND ASSIGNMENT TO NEVADA GOLD OF ASSUMED EXECUTORY CONTRACTS AND ASSUMED REAL PROPERTY LEASES**

10. 11 U.S.C. § 365(a) and (b) are hereby made applicable to these cases.

11. Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon Closing, the assumption and assignment to Nevada Gold of the Assumed Contracts and Assumed Real Property Leases identified on Exhibit B to this order is hereby approved, and the requirements of 11 U.S.C. § 365(b)(1) with respect thereto are hereby deemed satisfied.

12. The Receiver is hereby authorized in accordance with 11 U.S.C. §§ 105(a) and 365 to (a) assume and assign to Nevada Gold, effective at Closing, the Assumed Contracts and

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 11
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 11 of 20

Assumed Real Property Leases free and clear of all Interests, and (b) execute and deliver to Nevada Gold such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts and Assumed Real Property Leases to Nevada Gold.

13. Each Assumed Contract and Assumed Real Property Lease is an executory contract or unexpired lease under 11 U.S.C. § 365. The Washington Subsidiaries may assume each Assumed Contract and Assumed Real Property Lease in accordance with 11 U.S.C. § 365. The Washington Subsidiaries may assign each Assumed Contract and Assumed Real Property Lease in accordance with 11 U.S.C. §§ 363 and 365, and any provisions in any Assumed Contract or Assumed Real Property Lease that prohibits or conditions the assignment of such Assumed Contract or Assumed Real Property Lease or terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract or Assumed Real Property Lease constitute unenforceable anti-assignment provisions, which are void and of no force and effect. All other requirements and conditions under 11 U.S.C. §§ 363 and 365 for the assumption by the Washington Subsidiaries and assignment to Nevada Gold of each Assumed Contract and Assumed Real Property Lease have been satisfied. At such times as provided in the Purchase Agreement, in accordance with 11 U.S.C. §§ 363 and 365, Nevada Gold shall be fully and irrevocably vested in all right, title, and interest of the particular Washington Subsidiary party in and to each Assumed Contract and Assumed Real Property Lease. Any provision of any unexpired lease of nonresidential real property that purports to permit the landlord thereunder to cancel the remaining term of such lease if the Washington Subsidiary discontinues its use or operation of the leased real property is void and of no force and effect and shall not be enforceable against Nevada Gold, its assignees and sublessees, and the landlord under such lease shall not have the right to cancel or otherwise modify such lease or increase the rent, assert any Interest, or impose any penalty by reason of such discontinuation, the Washington Subsidiaries' cessation of operations, the

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 12
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 12 of 20

assignment of such leases to Nevada Gold, or the interruption of business activities at any of the leased premises.

14. All defaults or other obligations of the Washington Subsidiaries under the Assumed Contracts and Assumed Real Property Leases arising or accruing prior to the date of this Sale Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) shall be cured by the Washington Subsidiaries at Closing or as soon thereafter as practicable, and Nevada Gold shall have no liability for any obligation arising or accruing prior to the date of Closing, except as otherwise expressly provided in the Purchase Agreement.

15. Each non-debtor party to an Assumed Contract or Assumed Real Property Lease is forever barred, estopped, and permanently enjoined from (a) asserting against any Washington Subsidiary or Nevada Gold, or the property of either of them, any default existing as of the date of Closing, (b) asserting against Nevada Gold any counterclaim, defense, setoff or any other claim asserted or assertable against any Washington Subsidiary, or (c) imposing or charging against Nevada Gold any rent accelerations, assignment fees, increases, or any other fees as a result of the Washington Subsidiaries' assumption and assignment to Nevada Gold of the Assumed Contracts and Assumed Real Property Leases. The validity of such assumption and assignment to Nevada Gold of each Assumed Contract and Assumed Real Property Lease shall not be affected by any dispute between any Washington Subsidiary and any other party to an Assumed Contract or Assumed Real Property Lease. The failure of any Washington Subsidiary or Nevada Gold to enforce at any time one or more terms or conditions of any Assumed Contract or Assumed Real Property Lease shall not be a waiver of such terms or conditions, or of the Washington Subsidiaries' or Nevada Gold's rights to enforce every term and condition of the Assumed Contracts and Assumed Real Property Leases.

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 13
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 13 of 20

**ADDITIONAL PROVISIONS**

16. At Closing, each of the Washington Subsidiaries' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

17. This Sale Order (a) shall be effective as a determination that, as of Closing, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been transferred to the proceeds of sale, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

18. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

19. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests in the Purchased Assets shall not have delivered to the Receiver prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Purchased Assets or otherwise, then (a) the Receiver is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 14
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 14 of 20

person or entity with respect to the Purchased Assets, and (b) Nevada Gold is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature whatsoever.

20. All entities that are presently, or on the date of Closing may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to Nevada Gold at the Closing, and Nevada Gold hereby is authorized to retrieve and take possession of all Purchased Assets in the possession of any third parties, including but not limited to any lessor or licensor.

21. Following the Closing of the Sale, no holder of any lien, claim, encumbrance, or other interest shall interfere with Nevada Gold's title to, or use and enjoyment of, the Purchased Assets based on, or related to, any Interest, or based on any actions the Debtor may take in bankruptcy.

22. All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Receiver to transfer the Purchased Assets to Nevada Gold in accordance with the Purchase Agreement and this Sale Order.

23. To the extent provided by 11 U.S.C. § 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets sold, transferred, or conveyed to Nevada Gold on account of the filing or pendency of these chapter 15 cases, the Canadian receivership, or the consummation of the Sale contemplated by the Purchase Agreement.

24. Nevada Gold shall not be liable or responsible for any liability or other obligation of any Washington Subsidiary arising under or related to the Purchased Assets, except as expressly stated in the Purchase Agreement. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreement, Nevada Gold shall not be liable for any claims against any Washington Subsidiary or any of its

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 15
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 15 of 20

predecessors or affiliates, and Nevada Gold shall have no successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to any Washington Subsidiary or any obligations of any Washington Subsidiary arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the business of the Washington Subsidiaries.

25. Under no circumstances shall Nevada Gold be deemed a successor of or to any Washington Subsidiary for any Interest against or in any Washington Subsidiary or the Purchased Assets of any kind or nature whatsoever. The sale, transfer, assignment and delivery of the Purchased Assets shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Washington Subsidiaries. All persons holding Interests against or in the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests against Nevada Gold, its property, its successors and assigns, or the Purchased Assets with respect to any Interest such person or entity had, has, or may have against or in the Purchased Assets. Following the Closing, no holder of any Interest against any Washington Subsidiary shall interfere with Nevada Gold's title to or use and enjoyment of the Purchased Assets based on or related to such Interest.

26. This Court retains jurisdiction to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to Nevada Gold, (b) resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein, (c) interpret, implement, and enforce the provisions of this Sale Order, and (d) protect Nevada Gold against (i) any of the liabilities not

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 16
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 16 of 20

expressly assumed and assigned, and (ii) any Interests in any Washington Subsidiary or in the Purchased Assets, of any kind or nature whatsoever, attaching to the proceeds of the Sale.

27. Nothing contained in any plan of reorganization (or liquidation) confirmed in any case involving any Washington Subsidiary or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.

28. The transactions contemplated by the Purchase Agreement are undertaken by Nevada Gold in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to Nevada Gold, unless such authorization is duly stayed pending such appeal. Nevada Gold is a purchaser in good faith of the Purchased Assets and Assumed Contracts and Assumed Real Property Leases, and is entitled to all of the protections afforded by 11 U.S.C. § 363(m).

29. The terms and provisions of the Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, each Washington Subsidiary, its receivership estate, and its creditors, Nevada Gold, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Purchased Assets to be sold to Nevada Gold pursuant to the Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

30. Except for approvals from the Washington State Gambling Commission and the Washington State Liquor Control Board, neither the Receiver nor Nevada Gold is required to make any filing with or give any notice to, or to obtain any approval, consent, ratification, permission, waiver or authorization from, any person or any government body in connection with the execution and delivery of the Purchase Agreement or the consummation of the

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 17
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 17 of 20

transactions contemplated by the Purchase Agreement (other than with respect to governmental licenses which do not constitute Purchased Assets), and Nevada Gold does not need to seek or obtain shareholder consent to consummate the transactions contemplated by the Purchase Agreement.

31. The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

32. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court.

33. As provided in Bankruptcy Rules 6004(l) and 6006(d), and notwithstanding Bankruptcy Rule 7062, this Sale Order shall be effective and enforceable immediately upon entry. Time is of the essence in closing the transaction and the Receiver and Nevada Gold intend to close the Sale as soon as possible. Therefore, the stays provided for under Bankruptcy Rules 6004(h), 6006(d), and 7062 shall not apply.

34. Pursuant to the terms of the Purchase Agreement, Fortress is providing certain financing to Nevada Gold (as defined in the Purchase Agreement, the "Fortress Accommodation"). The amount of the Fortress Accommodation will be credited against the Washington Subsidiaries' obligations to Fortress, without the necessity of a cash payment by either Fortress or Nevada Gold to the Receiver, and as if the cash proceeds of such financing were paid to the Receiver by Buyer and distributed by the Receiver to Fortress. Accordingly, notwithstanding any other provision of this Order, the Fortress Accommodation and any debt instrument evidencing such Accommodation which represents a portion of the proceeds of

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 18
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 18 of 20

Sale, shall not be subject to the liens, claims or Interests of any creditor or party in interest and shall be owned and held by Fortress free and clear of any such liens, claims and Interests.

35. In the event there are multiple closings pursuant to Section 2.6 of the Purchase Agreement, the provisions of this Order with respect to Purchased Assets, including without limitation provisions relating to the sale of Purchased Assets free and clear of Interests, shall apply only to those assets that are subject to the applicable Closing.

36. The provisions of this Sale Order are non-severable and mutually dependent.

37. The CPO Report is approved.

DATED this _____ day of _____, 2010.

*[Signature]*
**United States Bankruptcy Judge**
(Dated as of Entered on Docket date above)

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 19
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS   Doc 80   Filed 05/27/10   Entered 05/27/10 13:51:59   Page 19 of 20

Presented by:

DAVIS WRIGHT TREMAINE LLP

By   /s/ Hugh R. McCullough
    Ragan L. Powers, WSBA #11935
    C. Keith Allred, WSBA #6566
    Hugh R. McCullough, WSBA #41435
    Attorneys for Grant Thornton Limited, as
    Receiver and Foreign Representative
    of the Washington Subsidiaries

By   /s/ Ronald G. Brown
    Ronald G. Brown, WSBA #8816
    999 Third Avenue, Suite 525
    Seattle, WA 98104
    Attorney for Old 99 Property Group,
    LLC, John Mitchell, and Mark Mitchell

K&L GATES LLP

By   /s/ Michael J. Gearin
    Michael J. Gearin, WSBA #20982
    David C. Neu, WSBA #33143
    925 Fourth Avenue, Suite 2900
    Seattle, WA 98104-1158
    Attorneys for Fortress Credit Corporation

RIDDELL WILLIAMS P.S.

By   /s/ Bruce J. Borrus
    Bruce J. Borrus, WSBA #11751
    Hilary Bramwell Mohr, WSBA #40005
    Riddell Williams P.S.
    1001 Fourth Avenue, Suite 4500
    Seattle, WA 98154-1192

WOLFF & SAMSON P.C.

    /s/ Karen L. Gilman
    Karen L. Gilman, admitted pro hac vice
    Wolff & Samson PC
    One Boland Drive
    West Orange, NJ 07052
    Attorneys for Nevada Gold & Casinos,
    Inc., and NG Washington II, LLC

ORDER AUTHORIZING SALE OF ASSETS
AND GRANTING OTHER RELIEF - 20
DWT 13533273v10 0090149-000001
(09-13569)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Case 09-13569-SJS    Doc 80    Filed 05/27/10    Entered 05/27/10 13:51:59    Page 20 of 20